## Commonwealth *v.* Pearson, Appellant (No. 1).

*Practice, Superior Court—Appeal—Discretion of trial court.*

The Superior Court will not reverse a judgment of the lower court, where the only error assigned is an abuse of discretion in refusing a new trial, and an examination of the record fully and clearly demonstrates the fairness of the verdict.

*Criminal law—Sodomy—Alibi—New trial—Weight of the evidence.*

Where, in the trial of an indictment for sodomy, the defense is an alibi, depending upon the testimony of witnesses who fix the date by reference to notations upon delivery slips, and the evidence is that the notations referred to were made not at the time of delivery but several days before, a new trial will not be granted on the ground that a verdict of guilty was against the weight of the evidence.

Argued March 14, 1921. Appeal, No. 355, Oct. T., 1920, by defendant, from judgment of Q. S. Berks County, Dec. Sessions, 1919, No. 74, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Charles Pearson. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for sodomy.

The facts are stated in the following opinion of WAG-NER, J., in the court below refusing motion for new trial:

The defendant in No. 74 December Sessions, 1919, was charged under four counts with assault and battery, assault and battery with intent to commit sodomy, solicitation to commit sodomy, and sodomy. This crime was alleged to have been committed upon one Blanche Edwards. In No. 75 December Sessions, 1919, he was charged under three counts, first, assault and battery, second, assault and battery with intent to commit sodomy upon one Mildred Myers, and third, solicitation to commit sodomy. The two cases were tried together. The jury returned a verdict of guilty in both cases.

The two reasons filed by the defendant for a new trial are that the verdict is (1) against the evidence, and (2) that it is against the law. It is necessary to consider only the first, as it is upon this that at the argument the defendant based his contention for a new trial.

At the time of the trial, June 16, 1920, Blanche Edwards was a girl 13 years old. She testified that she was in the eighth grade in school. Her appearance and manner of testimony indicated that she was an intelligent girl and impressed one with the conviction that she was telling the truth. She said that on May 5, 1919, while on her way from her home to a store in the neighborhood, the defendant, going the same way, met and asked her to come into his Ford automobile. That he took her to the store, and on the way asked her if she was coming back that way, stated that he would return in ten or fifteen minutes. She went to the store, got her things, and coming back met the defendant, who asked her to get into his machine. She got in, and shortly thereafter, according to her testimony (as shown on page 2, notes of testimony) he committed sodomy upon her.

The defendant did not attempt to discredit the girl's statement that the crime had been committed. What he

contended was that she was mistaken in her identity of the person. To show this he attempted to prove an alibi by his brother, Jacob Pearson, and three witnesses, Mrs. Martha Moyer, Mrs. Florence Ulrich, and Mrs. Amanda Ulmer. The brother, Jacob Pearson, testified that on this day the defendant had been with him until 5:20 or 5:30 in the evening, delivering potatoes at various places in the City of Reading. He stated that at a quarter of four they delivered potatoes at 123 Washington Street to Mrs. Moyer. That at about 4:15 they delivered potatoes on Canal Street to Mrs. Ulrich, and that about 4:40 they delivered potatoes to Bell Alley to Mrs. Ulmer. Blanche Edwards testified that the occurrence happened between 4:30 and 5:30 p. m. The brother testified (notes of testimony, page 21) that these potatoes were delivered on orders that had been taken the week previous. That he made out an order slip when they received the order. When asked by his counsel (notes of testimony, page 22), "Did you date that order slip?" he answered, "To the date that it was to be delivered."

From this it will be seen that the date on the order slips was not placed there at the time of delivery, but at the time of ordering, and that the date indicated the day when the potatoes were to be delivered. Mrs. Moyer testified that the defendant and his brother had delivered potatoes to her on May 5th. When asked how she fixed May 5th as the date, her answer was, "By my receipt," meaning the order slip. Mrs. Ulrich testified that about a quarter after four they delivered potatoes at her place. The only way she fixed May 5th was by her order slip. Mrs. Ulmer testified that potatoes were delivered to her on May 5th between half-past four and five o'clock. When questioned by the court how she knew it was May 5th, answered "By the receipt." When further questioned, "Is that the only way you know it?" she answered, "No, by washing day." The fact that the order slip called for delivery on May 5th would not necessarily indicate that they had been delivered upon that

particular day. When these witnesses were asked how they knew the time of day at which the potatoes were delivered to their respective houses, each one answered that she had "looked at the clock."

Blanche Edwards positively identified this defendant as the person who committed the crime. According to her testimony (notes of testimony, page 6) she had seen this defendant several times before the fifth of May, 1919, but did not know who he was. Therefore, although on the fifth of May he was a stranger to her by name, he was not a stranger to her by sight. Under the evidence, the guilt or innocence of the defendant was for the jury. Neither do we consider that the verdict was against the weight of the evidence.

The crime alleged in No. 75 December Sessions, 1919, was committed upon one Mildred Myers. This happened on the first Saturday in August of 1919. This girl was 12 years old at the time of the trial. She testified that she would be in eighth grade when school began again. Her manner also carried conviction of the truth of her evidence. She testified that this defendant on that day passed up and down before her home several times. That he then stopped and asked whether they (meaning she or her sister Louella, who was 14 years old) knew the way to Angelica. That he was in a Ford automobile and that he said if one of them would go along to show the way, he would give the one who went along a quarter. That she got into the machine, taking the back seat, having with her a two-year-old sister. That the defendant did not want the little sister to go along. That after going some distance, he asked her to come in the front seat so they could talk better. That when she came forward he solicited her and did with her, in the attempt to commit sodomy, as she had testified on page 10, notes of testimony. That she became frightened, jumped out of the machine, and ran down over a field to the home of a Mrs. Moring.

Louella Myers, a sister, identified the defendant as the person who asked them the way to Angelica, and said that he had offered a quarter for one of them to show the way. That Mildred got in, and after she was in, she (Louella) pushed in LaRue, the two-year-old girl. That the defendant did not want the youngest child to go along. That soon thereafter she saw him come back without the children. That she ran over the hill to see if she could find her sister, called for her, and found her at Mrs. Moring's. Mrs. Moring testified that on the first Saturday in August she heard Mildred Myers calling. That Mildred came up to her and said, "Mrs. Moring, can't you give me a glass of water, I am so nervous." That when she questioned her and asked her why she was so excited, the child then described the attempts of the defendant (see notes of testimony, page 15). William A. Long, who lives next door to where Mildred Myers lives, testified that he saw this defendant on this day passing four times up and down the road and that the fourth time he stopped in front of the home of Mildred Myers. That the defendant had a Ford machine. That the girls were there; that he asked them to go along to show him the way to the Angelica Hotel; that he offered Mildred Myers a quarter to go along. She jumped in the machine and went along, and that when he had been gone about half an hour he came back and told the other children that she was coming. These persons positively identified the defendant.

The defense here was also that of an alibi. The only person who testified to prove an alibi was defendant's brother, Jacob Pearson. We consider that in both cases the verdict was fully warranted by the evidence.

Rules for new trial in both cases are discharged.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Error assigned* was the order of court refusing new trial.

*W. B. Bechtel,* for appellant.

No appearance and no printed brief for appellee.

PER CURIAM, April 25, 1921:

The opinion of the court below in refusing a new trial in this case, so fully and clearly demonstrates the fairness of the verdict that nothing could be gained by a review of the testimony. The only assignment of error alleges an abuse of discretion in the court below in making the above order, and we are satisfied on a careful examination of the record that there was not any error in so deciding.

The judgment is affirmed, the record to be remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.